IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

James Johannes Sharpe, et al., :

               Plaintiffs,    :  Case No. 2:13-cv-00187

    v.                    :  JUDGE MICHAEL H. WATSON

Sierra Leone Ministry of    :  Magistrate Judge Kemp
Surveys, Lands and Environment,
et. al.,               : 

               Defendants.    :

REPORT AND RECOMMENDATION
AND ORDER

By Order dated September 22, 2014, this matter was referred
to the undersigned for an initial review and Report and
Recommendation. (Doc. 22). More specifically, the Order
directed the undersigned to "analyze preliminary issues raised by
this case, perhaps such as whether the Court has jurisdiction
over this case, whether any abstention doctrine warrants
declining jurisdiction in this case, whether defendants were
properly served, whether Miles Investments (S.L.) Ltd. is a
proper defendant, or any other issues ... pertinent in this case
at this posture." Id. at 2. After setting forth the relevant
background, the Court examines whether it has subject matter
jurisdiction over the claims against defendant the Sierra Leone
Ministry of Surveys, Lands and Environment. Next, the Court will
consider whether plaintiffs James Johannes Sharpe and Ubadire
Nathaniel Nwoko have effected proper service over the remaining
defendants in this case. Finally, the Court will address
plaintiffs' failure to move for the entry of default against Mr.
Mohamed and the Estate of Jamil S. Mohamed, despite the fact that
the complaint has been served upon those defendants and the time
for filing an answer has passed.

For the reasons set forth below, the answer filed on behalf of defendant Miles Investments will be stricken, and the Court will recommend that the cross-claim filed on behalf of Miles Investments be dismissed.  (Doc. 19).  Further, the Court will order plaintiffs to file a brief, within twenty-one days from the issuance of this report and recommendation and order, explaining how, based on the relevant law, the commercial activity exception to the Foreign Sovereign Immunity Act applies to the particular facts of this case.  In addition, the Court will order plaintiffs to show cause, within fourteen days of the issuance of this report and recommendation and order, as to why this action should not be dismissed against Miles Investments based upon their failure to effect proper service on that defendant in accordance with Rule 4(m).  Plaintiffs' service on Mr. Mohamed and the Estate of Jamil S. Mohamed is presumed to be effective, and the Court will not recommend dismissal of those defendants on this basis.  However, the Court will order plaintiffs to show cause within fourteen days from the issuance of this report and recommendation and order as to why this action should not be dismissed against those defendants.  Plaintiffs' filing shall be accompanied, if appropriate, by a request to enter default pursuant to Fed. R. Civ. P. 55, and a separate motion for default judgment.  While the Court anticipates problems with plaintiffs' ability to enforce such a judgment against Mr. Mohamed and the Estate of Jamil S. Mohamed based upon issues of personal jurisdiction, those issues are not before this Court for resolution at this juncture.

## I. Background

This case involves a dispute over real estate located in Sierra Leone.  In the amended complaint, plaintiffs James Johannes Sharpe and Ubadire Nathaniel Nwoko, both United States citizens, allege that they are owners of defendant Miles

Investments (S.L.) Ltd. ("Miles Investments"), a Sierra Leone corporation.  Plaintiffs allege that Miles Investments leased a parcel of beach-front property identified as No. 18 Beach Road Tokeh Village, Sierra Leone from defendant the Sierra Leone Ministry of Surveys, Lands and Environment for purposes of establishing an industrial ice factory in the western area of Sierra Leone.  The lease was for a 21-year period, with an option to renew for an additional 21-year period.  Plaintiffs claim that, on July 1, 2008, Miles Investments started producing and distributing ice bars at the ice factory.

Plaintiffs further allege that defendant Bassem Mohamed, administrator and beneficiary of the estate of Jamil S. Mohamed, also a defendant in this action, subsequently brought an action in Sierra Leone High Court (Case No. CC 281/08), challenging Sierra Leone Ministry of Surveys, Lands and Environment's title of ownership in the property.  Plaintiffs assert that, on October 22, 2008, "the Sierra Leone High Court, in Case No. CC281/08 issued an interlocutory injunction that restrains Miles Investments, including Directors and Shareholders from doing anything on the land leased from the Sierra Leone Government." (Doc. 6 at 7).  Plaintiffs also allege that, on June 20, 2011, the Sierra Leone High Court granted possession of the property to Bassem Mohamed.  According to plaintiffs, between 2008 and 2011 and contrary to their requests, Sierra Leone Ministry of Surveys, Lands and Environment "took no action to defend its title of ownership to the land" which it leased to Miles Investments.  Id. Based on the foregoing, plaintiffs brought this lawsuit seeking to recover the funds invested in the ice project in Sierra Leone. More specifically, plaintiffs seek "monetary relief ... for the loss of capital invested, the cost of the capital, and the reasonable projected investment-backed expectation of a net profit of at least $137,500 per year between 2008 and 2012."  Id.

at 3. On September 25, 2013, Mr. Sharpe attempted to file an "answer, affirmative defenses and cross-claim" on behalf of Miles Investments. (Doc. 19). None of the other defendants has made any attempt to appear in this case.

## II. <u>Discussion</u>

As an initial matter, the Court first examines Mr. Sharpe's attempt to file an "answer, affirmative defenses and cross-claim" on behalf of Miles Investments. It is well established that "[a] corporation must be represented by counsel and cannot proceed <u>pro se</u>." <u>Reich v. Pierce</u>, 1994 WL 709292, at *4, n.1 (6th Cir. Dec. 20, 1994), citing <u>Doherty v. American Motors Corp.</u>, 728 F.2d 334, 340 (6th Cir. 1984); <u>see also United States v. Jolly</u>, 2000 WL 1785533, at *2 n.4 (6th Cir. Nov. 20, 2000)("a corporation may not be represented by a <u>pro se</u> individual"). Consequently, and as noted in the Court's order issued on September 22, 2014, Mr. Sharpe cannot represent Miles Investments in this case. (Doc. 22). For this reason, the answer will be stricken and the Court will recommend that the cross-claim be dismissed. (Doc. 19). The Court now examines whether it has subject matter jurisdiction over the claims against the Sierra Leone Ministry of Surveys, Lands and Environment.

### A. <u>Subject Matter Jurisdiction</u>

In examining whether this Court has subject matter jurisdiction over plaintiffs' claims against the Sierra Leone Ministry of Surveys, Lands and Environment, the Court turns to the Foreign Sovereign Immunities Act ("FSIA"). The FSIA has been said to consist of "two major components." <u>Peterson v. Islamic Republic of Iran</u>, 627 F.3d 1117, 1124 (9th Cir. 2010). The first component arises from 28 U.S.C. §1604, which provides that, "[s]ubject to existing international agreements to which the United States is a party at the time of enactment of this Act[,] a foreign state shall be immune from the jurisdiction of the

4

courts of the United States and of the States except as provided in sections 1605 and 1607 of this chapter." The second component relates to attachment, arrest, and execution of "property in the United States of a foreign state...." 28 U.S.C. §1610. The first component of the FSIA is relevant to this case. Although no defendant has made an appearance and raised subject matter jurisdiction under the FSIA as an issue in this case, "federal courts have an independent obligation to consider the presence or absence of subject-matter jurisdiction under [the] FSIA sua sponte." Hu v. Communist Party of China, 2012 WL 7160373, at *3 (W.D. Mich. Nov. 20, 2012).

The FSIA defines "foreign state" as including "a political subdivision of a foreign state or an agency or instrumentality of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b)." 28 U.S.C. §1603(a). Subsection (b) defines "agency or instrumentality of a foreign state" to mean any entity:

> (1) which is a separate legal person, corporate or otherwise, and
> (2) which is an organ of a foreign state or political subdivision thereof, and
> (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title, nor created under the laws of any third country.

Id. Here, the Sierra Leone Ministry of Surveys, Lands and Environment is an agency of the foreign state of Sierra Leone, and thus it properly falls within the scope of the FSIA. See, e.g., Human v. Czech Republic–Ministry of Health, 2014 WL 3956747, at *5 (D.D.C. Aug. 14, 2014)(finding that the Ministry of Health is an agency of the Czech Republic and therefore is within the purview of the FSIA). Consequently, unless an exception applies, sovereign immunity bars this Court from hearing plaintiffs' claims against the Sierra Leone Ministry of

Surveys, Lands and Environment.  <u>See id</u>.

With respect to this Court's subject matter jurisdiction, plaintiffs allege the following in the complaint:

> The Foreign Sovereign Immunity Acts grants original jurisdiction to the U.S. District courts in any nonjury civil action against the [Sierra Leone Ministry of Surveys, Lands and Environment] that is not entitled to immunity pursuant to 28 U.S.C. sections 1605(a)(2)(3); since the [Sierra Leone Ministry of Surveys, Lands and Environment] engaged in a "Commercial Activity" by engaging land leasing Agreement, and had the Judiciary of the local forum expropriated the leased property from [Miles Investments] without payment of prompt and effective compensation; preventing the timely loan payment by [Miles Investments] to Defendant Dairy Land Express, Inc. of 2555 Petzinger Road, Columbus, Ohio USA 43209.

(Doc. 6 at 5).  Based on the foregoing, plaintiffs rely on the following exceptions:

> (a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case--
>
> (2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States;
>
> (3) in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States;

28 U.S.C. §1605(a)(2),(3).

Here, plaintiffs do not allege that the beach-front property

was taken in violation of international law and the beach-front property or property exchanged for it is in the United States in connection with a commercial activity carried on in the United States by Sierra Leone.  Plaintiffs likewise do not allege that the beach-front property or any property exchanged for it is owned or operated by an agency or instrumentality of Sierra Leone engaged in a commercial activity in the United States.  Consequently, 28 U.S.C. §1605(a)(3) does not apply.

Similarly, plaintiffs do not allege that the Sierra Leone Ministry of Surveys, Lands and Environment carried on a commercial activity in the United States, nor do they allege that the Sierra Leone Ministry of Surveys, Lands and Environment engaged in an act in the United States in connection with its commercial activity elsewhere.  Therefore, the sole question remaining is whether, under 28 U.S.C. §1605(a)(2), this case is based upon an act outside the United States in connection with the Sierra Leone Ministry of Surveys, Lands and Environment's commercial activity elsewhere which caused a direct effect in the United States.  This is known as the "direct effect" requirement of the commercial activity exception to the FSIA.

The Second Circuit Court of Appeals has explained the direct effect requirement as follows:

> [A]n effect is direct if it follows as an immediate consequence of the defendant's activity.  Immediacy implies no unexpressed requirement of substantiality or foreseeability, but rather ensures that jurisdiction may not be predicated on purely trivial effects in the United States.  Congress did not intend to provide jurisdiction whenever the ripples caused by an overseas transaction manage eventually reach the shores of the United States.

Virtual Countries, Inc. v. Republic of South Africa, 300 F.3d 230, 236 (2d Cir. 2002) (internal quotations and citations omitted).  Thus, the effect in the United States must "be more than 'purely trivial' or 'remote and attenuated.'"  Terenkian v.

7

Republic of Iraq, 694 F.3d 1122, 1134 (9th Cir. 2012), quoting
Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 618
(1992).

In this case, plaintiffs allege that the actions of the
Sierra Leone Ministry of Surveys, Lands and Environment caused
them to suffer financial harm in the United States, and the
financial harm resulted in Miles Investments' inability to make
timely payment on a loan in the United States.  Under the
relevant law, financial injury in the United States alone is not
a legally sufficient effect to satisfy the "direct effect"
requirement.  As one court observed, "If a loss to an American
individual and firm resulting from a foreign tort were sufficient
standing alone to satisfy the direct effect requirement, the
commercial activity exception would in large part eviscerate the
FSIA's provision of immunity for foreign states."  Antares
Aircraft, L.P. v. Federal Republic of Nigeria, 999 F.2d 33, 36
(2nd Cir. 1993).  Thus, the fact that plaintiffs may have
suffered some financial injury from a foreign land dispute
cannot, standing alone, trigger the commercial activity exception
to the FSIA.  See, e.g., Guirlando v. T.C. Ziraat Bankasi A.S.,
602 F.3d 69, 79 (2nd Cir. 2010).  Where, as here, all legally
significant acts took place in Sierra Leone and the only alleged
direct effect in the United States is a monetary loss, the
exception does not apply.  See id.

The Court notes that plaintiffs bear the burden of
demonstrating that the Sierra Leone Ministry of Surveys, Lands
and Environment does not have immunity because an exception to
the FSIA applies.  See Kettey v. Saudi Ministry of Education,
2014 WL 2919152, at *5 (D.D.C. June 27, 2014).  For the reasons
stated above, they do not appear to have met that burden at this
stage of litigation.  Rather than recommending immediate
dismissal of the action against the Sierra Leone Ministry of

Surveys, Lands and Environment at this juncture, however, and because plaintiffs are proceeding pro se, the Court will grant plaintiffs the opportunity to brief the issue of this Court's subject matter jurisdiction over their claims against the Sierra Leone Ministry of Surveys, Lands and Environment.  More specifically, plaintiffs shall file a brief explaining how, based on the relevant law, the commercial activity exception applies to the particular facts of this case.  Plaintiffs shall file this brief within twenty-one days from the issuance of this report and recommendation and order.

### B. Service of Process

The Court now examines whether plaintiffs have properly served the remaining defendants, namely Bassem Mohamed, the Estate of Jamil S. Mohamed, and Miles Investments.  Fed. R. Civ. P. 4(m) sets forth the general requirement that a complaint and summons be served on each defendant within 120 days of the date the complaint is filed.  By its terms, the rule requires that the Court take either one of two actions if service is not made within that time frame – either "dismiss the action without prejudice against that defendant" or "order that service be made within a specified time."

Rule 4 also contains a mandate concerning extension of time to make service; it provides that "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."  The Advisory Committee Notes to the 1993 amendments to Rule 4 interpret this language to mean that when a plaintiff has not shown good cause, the Court still may grant an extension if that would represent a sound exercise of the Court's discretion.  This Court has adopted that interpretation of Rule 4(m).  See Vergis v. Grand Victoria Casino & Resort, 199 F.R.D. 216 (S.D. Ohio 2000).  Other District Courts within the Sixth Circuit have reached similar conclusions.  See,

e.g., In re Aredia and Zometa Prods. Liab. Litig., 2007 WL
4376098, *2 (M.D. Tenn. Dec. 13, 2007) ("this Court may clearly
grant more time without showing good cause...."); see also
Slenzka v. Landstar Ranger, Inc., 204 F.R.D. 322 (E.D. Mich.
2001); Burnett v. Martin, 2007 WL 2156541 (W.D. Ky. July 24,
2007). These courts also generally identify, as factors to be
taken into account, whether failure to grant an extension would,
in effect, cause any dismissal to be with prejudice due to the
running of the statute of limitations; whether the unserved
defendant was on notice that suit had been filed; and whether
dismissal would subvert the goal of deciding cases on their
merits.

Fed. R. Civ. P. 4(f) generally provides three mechanisms of
service upon individuals in foreign countries. Specifically,
Rule 4(f) provides:

> Unless federal law provides otherwise, an individual –
> other than a minor, an incompetent person, or a person
> whose waiver has been filed – may be served at a place
> not within any judicial district of the United States:
>
> (1) by any internationally agreed means of service that
> is reasonably calculated to give notice, such as those
> authorized by the Hague Convention on the Service Abroad
> of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an
> international agreement allows but does not specify other
> means, by a method that is reasonably calculated to give
> notice:
>
> > (A) as prescribed by the foreign country's law for
> > service in that country in an action in its courts
> > of general jurisdiction;
> >
> > (B) as the foreign authority directs in response to
> > a letter rogatory or letter of request;
> >
> > (C) unless prohibited by the foreign country's law,
> > by:

> > (i) delivering a copy of the summons and the complaint to the individual personally; or
> >
> > (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
>
> (3) by other means not prohibited by international agreement, as the court orders.

Sierra Leone is neither a signatory of the Hague Convention nor a Non-Member Contracting State; therefore, Fed. R. Civ. P. 4(f)(1) does not provide this Court with guidance in perfecting service in this case. In examining these three mechanisms, it is important to keep in mind that Fed. R. Civ. P. 4(f) does not denote any hierarchy or preference of one method of service over another. See Rio Properties, Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1015 (9th Cir. 2002).

Turning to service of process in this case, the Court first notes that plaintiffs do not appear to have made any effort to serve Miles Investments. Although plaintiffs are owners of that corporation, and this case presents a unique set of circumstances in that plaintiffs have, in effect, sued themselves, the fact remains that Miles Investments is its own entity under the law which must be served in accordance with Rule 4(m). See, e.g., Miles v. Kohli & Kaliher Assoc., Ltd., 917 F.2d 235, 254 (6th Cir. 1990)("a corporation is presumed to be an autonomous entity, wholly separate from its shareholders"). Consequently, the Court will order plaintiffs to show cause as to why this action should not be dismissed against Miles Investments based on their failure to effect proper service on that defendant under Rule 4(m). Plaintiffs shall file a brief in response to this Court's show cause order within fourteen days of the issuance of this report and recommendation and order. The Court now examines service of process as it pertains to Bassem Mohamed and the Estate of Jamil

11

S. Mohamed.

After several failed attempts at service, Mr. Sharpe ultimately attempted to serve defendants Mr. Mohamed and the Estate of Jamil S. Mohamed in Sierra Leone under Fed. R. Civ. P. 4(f)(2)(C)(ii), using a form of mail sent by the Clerk which required a signed receipt. More specifically, on July 23, 2013, Mr. Sharpe filed returns of service for Bassem Mohamed and the Estate of Jamil S. Mohamed (Doc. 17), attaching DHL tracking showing signed receipt for the documents sent by the Clerk of Court. Although this service occurred nearly one month beyond the 120-day requirement set forth in Fed. R. Civ. P. 4(m), the Court, in its discretion, finds it appropriate to extend the time period for service in this instance. The record reflects that, prior to the service under Fed. R. Civ. P. 4(f)(2)(C)(ii), Mr. Sharpe made repeated efforts to serve the defendants at issue. Further, the delay in serving the defendants is not extraordinary. Based on the foregoing, service is presumed to be effective, and the Court will not recommend dismissal against Mr. Mohamed and the Estate of Jamil S. Mohamed on this basis.

## C. Default

As noted above, the docket reflects that the complaint has been served upon Mr. Mohamed and the Estate of Jamil S. Mohamed. The docket likewise reflects that the time for filing an answer has passed, and that plaintiffs have not moved for the entry of default against Mr. Mohamed and the Estate of Jamil S. Mohamed.

Local Rule of Court 55.1 provides as follows:

**55.1 DEFAULTS and DEFAULT JUDGMENTS**

(a) If a party makes proper service of a pleading seeking affirmative relief but, after the time for making a response has passed without any response having been served and filed, that party does not request the Clerk to enter a default, the Court may by written order direct the party to show cause why the claims in that pleading should not be dismissed for failure to prosecute.

(b) If a party obtains a default but does not, within a reasonable time thereafter, either file a motion for a default judgment or request a hearing or trial on the issue of damages, the Court may by written order direct the party to show cause why the claims upon which default was entered should not be dismissed for failure to prosecute.

(c) Nothing in this Rule shall be construed to limit the Court's power, either under Fed.R.Civ.P. 41 or otherwise, to dismiss a case or to dismiss one or more claims or parties for failure to prosecute.

Pursuant to that Rule, plaintiffs are directed to show cause within fourteen days from the issuance of this report and recommendation and order as to why this action should not be dismissed. Plaintiffs' filing shall be accompanied, if appropriate, by a request to enter default pursuant to Fed. R. Civ. P. 55, and a separate motion for default judgment. While a default judgment is governed by Fed. R. Civ. 55(b), a default judgment cannot be entered unless a default has been entered previously by the Clerk under Rule 55(a). While the Court anticipates problems with plaintiffs' ability to enforce such a judgment against Mr. Mohamed and the Estate of Jamil S. Mohamed based upon issues of personal jurisdiction, those issues are not before this Court for resolution at this time.

### III. <u>Conclusion</u>

Based on the foregoing, the answer filed on behalf of defendant Miles Investments is stricken, and the Court recommends that the cross-claim filed on behalf Miles Investments be dismissed. (Doc. 19). Further, the Court orders:

- plaintiffs to file a brief, within twenty-one days from the issuance of this report and recommendation and order, explaining how, based on the relevant law, the commercial activity exception to the Foreign Sovereign Immunity Act applies to the particular facts of this case;

- plaintiffs to show cause, within fourteen days of

13

the issuance of this report and recommendation and order, as to why this action should not be dismissed against Miles Investments based upon their failure to effect proper service on that defendant in accordance with Rule 4(m); and

- plaintiffs to show cause within fourteen days from the issuance of this report and recommendation and order why this action should not be dismissed against those defendants. Plaintiffs' filing shall be accompanied, if appropriate, by a request to enter default pursuant to Fed. R. Civ. P. 55, and a separate motion for default judgment.

## IV. <u>Procedure on Objections</u>

### <u>Procedure on Objections to Report and Recommendation</u>

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

### <u>Procedure on Objections to Order</u>

Any party may, within fourteen days after this Order is

14

filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5.  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.3.

/s/Terence P. Kemp
United States Magistrate Judge

15